**SIMONS, Plaintiff-Appellee v. CITY ICE & FUEL COMPANY, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3740.  Decided October 23, 1944.

James F. Henderson, Columbus, for plaintiff-appellee.

Knepper, White & Dempsey, Columbus, for defendant-appellant.

Montgomery, J., of the 5th Dist. sitting in place of Barnes, J.

## OPINION

By HORNBECK, J.

This is an appeal from a judgment of the Common Pleas Court entered on a verdict of a jury in favor of plaintiff and against the defendant in the sum of $5000.00. The action was for damages for personal injuries claimed to have been suffered by plaintiff by reason of the negligence of the defendant in failing to provide proper means of exit for the plaintiff from a zero locker owned and operated by the defendant.

Three errors are assigned under the respective headings appearing in the brief of appellant.

It is conceded in the pleadings and established by the evidence that plaintiff contracted with the defendant for the rental of two lockers in its cold storage locker room; that dur-

ing regular business hours there was an entrance regularly used by patrons from the outside of the building into a cutting room, then into an ageing room, then into an anteroom and finally, through a heavy door, into the locker room proper; that there was an emergency bell button near this door inside the locker room. It is also admitted and established that there was a second or south entrance which from the outside of the building went into the receiving room, then through another large double, insulated door to the locker room. On this last door there was a push spring operated by a knob which upon pressure normally released the lock and opened the door.

Plaintiff avers and offers testimony tending to establish that she visited the locker frequently after working hours, at nights and on Sundays, and that most frequently on these visits she went alone into the building and locker room from the south entrance although occasionally she rang for the watchman who let her into the building and the locker room. It appears from her testimony that, at the time she engaged the lockers, she was shown the means of entrance commonly used during business hours and the interior of the locker room and the means of exit and the emergency bell were pointed out to her. The defendant admits the placing of the emergency bell.

On the day in question, Sunday, December 22, 1940, plaintiff entered the locker room from the south entrance and after opening one of her lockers and securing the produce which she desired to take therefrom attempted to leave by the exit through which she came. The door did not open. Thereafter she went to the other door at the west entrance and found it locked. She attempted to cause the door through which she came to open but without success and pounded it violently with her hands and arms and with a frozen goose which she had taken out of the refrigeration; also hurled her body against the door on several occasions. She pressed the emergency bell three separate and distinct times. Finally, after she had been in the locker room, which was kept at a temperature of zero to 5 below, for approximately 25 minutes, somebody came to a door and let her out.

Plaintiff asserts that she suffered the injuries set out in her petition as the proximate result of the negligence of the defendant in several particulars of which eventually but two were submitted to the jury, namely, that the defendant

"failed to provide an attendant for answering the said emergency bell of said locker room at said time", and "defendant failed to provide means of knowing that plaintiff was using said locker room at said time". Defendant claims and plaintiff concedes that the bell operated by the emergency button in the locker room was placed in the cutting room in which there were no employees regularly working on nights, Sundays and holidays.

The errors assigned are, first, that the defendant was guilty of no negligence.

The case was submitted upon the testimony of plaintiff and her witnesses only. The action is in tort growing out of negligence in failing to perform the implied terms of a contract, **B. & O. Railroad Company v Armstrong, 99 Oh St, 166.** The locker room obviously was a dangerous place in which to remain for any considerable length of time. The defendant was charged with this knowledge and owed to the plaintiff, who had a right to be in the locker room by virtue of her rental contract with the defendant, the duty of exercising ordinary care to afford her a proper and safe means of exit from said room. Apparently, if the door would not open, through week days and business hours this was accomplished by the emergency bell because, if needed, it would attract the attention of employees regularly working in the cutting room. But, on other days, unless the bell rang loud enough to be heard in parts of the building outside the cutting room it would serve no purpose of warning.

A fair consideration of this record is convincing that the plaintiff, at least by tacit consent of defendant, had regularly gone by the south entrance into the locker room on Sundays and after business hours. It is urged by the defendant that she, as all other customers who desired to enter by this approach, should have rung a bell for a watchman who was on duty who would thereby be notified and who would come and let them into the locker room. The jury was well within its rights in concluding that there was no obligation on the part of any customer to ring this bell to get into the lockers, as it appears that this bell was on the outside of the building and was the means of accomplishing entrance to the building and not necessarily to the locker room. In any event, it is testified by the Vice President of defendant company that the details of the management of the locker room, and who went in or out and when, while Mr. Matthews, the watchman, was on duty, was handled by him, and from the plaintiff's testimony it

is properly inferred that she had access to and visited the lockers by the south entrance with the knowledge and consent of Mr. Matthews.

It further appears from the testimony that the building in which the zero locker was located was a large structure consisting of five or six stories covering a quarter of a block and that the one watchman had to take care of all of it. The Vice President states that as to the locker "the watchman had nothing to do with customers, his job was to watch temperatures only", and he admitted that a few of the patrons of the locker had arrangements to go in by the south entrance. In the situation thus appearing an issue was presented whether or not defendant was negligent in failing to provide an attendant to answer the emergency bell or to provide some means whereby in an emergency the defendant would know that some patron was in the locker room.

It was incumbent upon the defendant, if it permitted its customers to use the locker after hours, on Sundays and on holidays, to afford them the same protection as during business hours against an emergency wherein they might be imprisoned in the locker room. Inasmuch as the watchman regularly assigned was not under any obligation toward the locker room except to watch temperatures, certainly, if he was expected to meet an emergency call, the bell should have been so placed or should have been so powerful, as to be audible in any place where the watchman might be working. If this watchman was not to be charged with any obligation toward the customers properly using the locker room in an emergency, then some other watchman or some other means as required by ordinary care, should have been afforded to meet such an emergency as the jury had the right to find was established in this case. The jury had the right to find that neither the watchman nor the bell were effective in assuring the plaintiff's release. A. L. I. Restatement of the Law of Torts, 938, Sec. 343.

The second error assigned is that the plaintiff was guilty of negligence proximately contributing to her own injuries. It is urged that she knew that the bell operated by the emergency button in the locker room was situated in the cutting room and that she also knew there would be no person working there after business hours and further, that she should have called the watchman to direct her and probably to conduct her into the locker room. Neither situation in our judgment, compels the conclusion that plaintiff is chargeable with

contributory negligence as a matter of law. She engaged the lockers during business hours. She was not put on notice either that the bell might not be heard beyond the cutting room or that the defendant would not meet its obligation to use due care in some form to assure her safe exit from the locker room if, in an emergency, she was imprisoned therein. The question of her contributory negligence in the light of what she knew about the physical set-up and about the locker room was properly submitted to the jury for factual determination.

We are cited to many Ohio cases with most of which we are familiar. They are principally cases arising out of accidents at railroad crossings. We comment on a few of them.

**Railway Company v Lynch, 69 Oh St 123,** was an action instituted by one, Lynch, who had attempted to rescue a woman from being run over by a caboose and in so doing was himself injured. Lynch's contributory negligence was an issue and it was held that the persons whose rescue is attempted must be in the position of peril from the negligence of defendant, and the rescue must not be attempted under such circumstances, or in such a manner, as to constitute recklessness but that

"those conditions appearing, a recovery will not be prevented by the fact that negligence of the person whose rescue is attempted contributed to his peril, nor by the fact that the plaintiff is an employee of the defendant."

We do not perceive any principle announced in the cited case which would be controlling here. Upon the whole, the citation is favorable to the plaintiff.

In **Interurban Railway & Terminal Co., et al. v Hancock, 75 Oh St 88,** the passenger attempted to recover from an injury to his arm which he intentionally and needlessly projected from the window of a rapidly moving car in which he was traveling. It appeared that the window had four iron bars extending horizontally across it, equally distant from each other, the top one approximately twelve inches from the window sill. The Court held that the act of the plaintiff in putting his arm through the window protected as above stated was contributory negligence as a matter of law. The statement of the controlling facts marks the distinction between the cited case and the instant case.

**Davis v The Somers-Cambridge Co., 75 Oh St 215.** This authority deals with the doctrine of assumed risk and announces the well recognized principle that one, who, knowing and appreciating the risk, voluntarily places himself in a position of danger cannot recover. Davis, was an employee of the defendant company thoroughly conversant with all of the conditions in and about the frame storage structure where dynamite was stored. With this knowledge he took shelter in a thunderstorm in proximity to the storehouse which was struck by lightning. The determinative factor, however, was that Davis charged, "no negligence.* * * as against the defendant concerning a quantity of dynamite equal to two hundred pounds, and caps to the number of two hundred, stored in said dynamite house", but only for such negligence as to the excess, if any, above these amounts. The Court held that, as to the excess, he made no case because he knew generally the danger even though he did not appreciate the precise extent or character of the injury he would sustain in the event of an explosion.

**C. D. & M. Electric Co. v. O'Day, 123 Oh St 639**, and **Pennsylvania Railroad Company v Moses, 125 Oh St 621**, were both death claims by reason of injuries suffered at grade crossings and both cases went to the Supreme Court from this Court. They treat of the obligation of persons approaching railway crossings and are not helpful here.

The third error assigned is that if the plaintiff suffered any injuries they were self-inflicted. This claim is not well made because, although it does appear that in the first stages of plaintiff's incarceration in the locker room she said that she was not frightened, there is no question, both by reason of what she did and upon her statements that she was frightened and greatly excited when she realized that there was grave possibility that she would not be able to get out alive. The questions presented to the jury were whether the results suffered were reasonably to be anticipated, 25 C. J. S. 481, and did she fairly believe that she was facing an emergency in the light of which she acted in a reasonable manner in doing the physical acts which resulted in her injuries. She was not held to a nice distinction of just what would be the most reasonable steps to take to assure her release. In retrospect, it is easy to say much that she did was unnecessary and futile and could not have assisted her in getting out of the locker room. But the test is, did she act in an inordinate and unjustified manner in the state of mind under which she was laboring at the time she was attempting to bring about her release.

Finally, and as a fourth assignment of error, it is asserted that the verdict is greatly excessive. The closest question under this assignment is whether the physical condition from which plaintiff suffered in its various manifestations was caused by her injuries in the locker room. However, the jury had the right to determine this question in favor of the plaintiff and having done so, we cannot say that the pecuniary damage awarded is disproportionate to the after effects which it appears plaintiff suffered and will continue to suffer from her injuries.

The judgment will be affirmed.

MONTGOMERY, J., of the 5th District sitting by designation in place of BARNES, P. J., concurs.

GEIGER, J., dissents on authority of **Miller v R. R. Co., 78 Oh St 309; Davis v R. R. Co., 135 Oh St 401.**